UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                       )
IN RE APPLICATION OF USA PURSUANT          )          ML No:  1:23-ml-01789
TO 18 U.S.C. § 3512 FOR ORDER FOR          )
COMMISSIONER'S APPOINTMENT FOR             )
FRAUD INVESTIGATION                        )
                                                       )
_____)

*Reference:*       *DOJ Ref. # CRM-182-89575*

APPLICATION OF THE UNITED STATES FOR AN ORDER
FOR A COMMISSIONER'S APPOINTMENT PURSUANT TO 18 U.S.C. § 3512

The United States of America, moving by and through its undersigned counsel, respectfully submits this *ex parte* application for an Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Erica Y. Laster, Trial Attorney, Office of International Affairs, Criminal Division, U.S. Department of Justice (or a substitute or successor subsequently designated by the Office of International Affairs), as a commissioner to collect evidence and to take such other action as is necessary to execute this and any subsequent, supplemental requests for assistance with the above-captioned criminal matter from Panama.  In support of this application, the United States asserts:

RELEVANT FACTS

1.      The Central Authority of Panama, the Ministry of Government and Justice, submitted a request for assistance (the Request) to the United States, pursuant to the Treaty Between the United States of America and the Republic of Panama on Mutual Assistance in Criminal Matters, U.S.-Pan., Apr. 11, 1991, S. TREATY DOC. NO. 102-15 (1991) (the Treaty).

2.      As stated in the Request, the Third Section of Crimes Against Property – Office of the Metropolitan Prosecutor, in Panama, is investigating Imtiaz Ismail Dasoo Dasoo (Dasoo)

1

for fraud, which occurred on or about July 14, 2020, in violation of the criminal law of Panama, specifically, Article 220 of the Panamanian Criminal Code.  Under the Treaty, the United States is obligated to assist in response to the Request.

3.      According to Panamanian authorities, on July 14, 2020, Dasoo's father was admitted into the emergency room of a Panamanian hospital in order to receive medical treatment.  Dasoo accompanied his father and signed as the person responsible for payment of medical services provided by the Panamanian hospital.  On July 16, 2020, the Panamanian hospital notified Dasoo that Dasoo's father needed to undergo medical treatment and that the hospital required a down payment of 20,000 USD.  Dasoo informed the hospital that he would make the required payment.

4.      On July 16, 2020, the Panamanian hospital received a phone call from an unknown subject purporting to be an agent of an international insurance company, Allianz Assistance (Allianz Global Assistance), located in the United States.  The unknown subject stated that Dasoo provided information about his father and Allianz Global Assistance would send a letter to the Panamanian hospital guaranteeing payment of the hospital expenses. However, the unknown subject requested Dasoo's father's hospital file in order to send the payment.  As a result, the Panamanian hospital contacted Dasoo to obtain his authorization to send information to Allianz Global Assistance.  Dasoo provided his authorization and the unknown subject purporting to be an agent of Allianz Global Assistance confirmed that it would cover hospital expenses incurred as of July 22, 2020.

5.      On July 22, 2020, Dasoo's father died. Dasoo called the hospital and notified hospital staff to refrain from informing Dasoo's relatives that an insurance company would be paying his father's hospital expenses.  The Panamanian hospital made multiple telephone calls

and emails to Allianz Global Assistance requesting payment.  However, Allianz Global Assistance failed to respond.  Subsequently, the Panamanian hospital received an email containing a letter from Allianz Global Assistance guaranteeing payment and detailing that the Panamanian hospital should debit the following amounts from eight different credit cards totaling approximately 98,061.29 USD.  The security codes were provided for all of the credit cards.

6.      However, when the Panamanian hospital attempted to collect payment, they learned that all of the cards were suspended and/or had insufficient funds.  The Panamanian hospital contacted Allianz Global Assistance who informed them that it did not have a case or policy number registered and/or assigned to Dasoo's father.  Panamanian authorities opened an investigation and determined that the emails purporting to be from Allianz Global Assistance originated from the United States.  Panamanian authorities seek to determine whether Allianz Global Assistance has information and/or an insurance policy under policy number XXXXXXXXXXXX2891 related to Dasoo's father.

7.      To further the investigation, Panamanian authorities have asked U.S. authorities to provide business records pertaining to Allianz Global Assistance policy number XXXXXXXXXXXX2891, located in the United States.

## LEGAL BACKGROUND

8.      A treaty[1] constitutes the law of the land.  U.S. Const. art. VI, cl. 2.  The provisions of a treaty have equal footing with acts of Congress and are binding on the courts. See Asakura v. City of Seattle, 265 U.S. 332, 341 (1924); United States v. The Peggy, 5 U.S. 103

---

[1] The term "Treaty" used herein encompasses bilateral treaties, multilateral conventions, instruments, and protocols.

(1801); <u>United States v. Emuegbunam</u>, 268 F.3d 377, 389 (6th Cir. 2001).  The provisions of a treaty should be construed liberally "to give effect to the purpose which animates it."  <u>United States v. Stuart</u>, 489 U.S. 353 (386) (1989) (internal quotations marks omitted).  To the extent that the provisions of a treaty are inconsistent with a preexisting statutory provision, the treaty supersedes the statute.  <u>Zschernig v. Miller</u>, 389 U.S. 429, 440-41 (1968).

9.     The United States and Panama entered into the Treaty to promote more effective judicial cooperation and assistance between the parties in criminal matters.  <u>See</u> Treaty, pmbl. The Treaty obligates each party, upon request, to provide assistance to the other in criminal investigations, prosecutions, and related proceedings, including assistance in serving documents, obtaining testimony, statements, and records, and executing searches and seizures.  Article 1(2). In addition, the Treaty, like 18 U.S.C. § 3512, authorizes federal courts to use compulsory measures to further the execution of such requests.  Article 6(1) ("The courts of the Requested State shall have jurisdiction in accordance with its laws to issue subpoenas, search warrants, or other process necessary in the execution of the request").

10.     When executing a treaty or non-treaty request for assistance from a foreign authority, an attorney for the government may file an application to obtain any requisite court orders under 18 U.S.C. § 3512.  This section authorizes a federal court to issue such orders and provides in pertinent part:

> Upon application, duly authorized by an appropriate official of the Department of Justice, of an Attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.

*          *          *

[A]n application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia.

\*                            \*                            \*

The term "foreign authority" means a foreign judicial authority, a foreign authority responsible for the investigation or prosecution of criminal offenses or for proceedings related to the prosecution of criminal offenses, or an authority designated as a competent authority or central authority for the purpose of making requests for assistance pursuant to an agreement or treaty with the United States regarding assistance in criminal matters.

18 U.S.C. § 3512(a)(1), (c)(3), (h)(2).

11.     Congress enacted this section to make it "easier for the United States to respond to [foreign] requests by allowing them to be centralized and by putting the process for handling them within a clear statutory scheme."  155 Cong. Rec. 6,810 (2009) (statement of Sen. Whitehouse); Foreign Evidence Request Efficiency Act of 2009, Pub. L. No. 111-79, 123 Stat. 2086.[2]  This section provides clear authority for the federal courts, upon application duly authorized by an appropriate official of the Department of Justice, to issue orders that are necessary to execute a foreign request.

12.     An application is duly authorized by an appropriate official of the Department of Justice when the Office of International Affairs[3] has reviewed and authorized the request and

---

[2] Prior to the enactment of 18 U.S.C. § 3512, the United States routinely utilized the procedures authorized by 28 U.S.C. § 1782 (the "commissioner" process) to execute requests from foreign authorities.  See In re Request from the United Kingdom, 685 F.3d 1, 11 (1st Cir. 2012) (18 U.S.C. § 3512 provides a more streamlined process than 28 U.S.C. § 1782, the statute under which foreign requests were executed prior to enactment of section 3512); see also Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247-49 (2004) (describing history of Section 1782).  When enacting Section 3512, Congress anticipated that improved U.S. handling of foreign requests would ensure reciprocity in response to U.S. requests for assistance in its criminal investigations.  See, e.g., 155 Cong. Rec. 10,093 (2009) (statement of Rep. Schiff).

[3] The Attorney General, through regulations and Department of Justice directives, delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters.  See 28 C.F.R. 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81B and 81C (2018).

executes the request itself or delegates execution to another attorney for the government.[4]  Upon

such a duly authorized application, Section 3512 authorizes a federal judge[5] to issue "such orders

as may be necessary to execute [the] request," including:  (1) search warrants under Fed. R.

Crim. P. 41; (2) orders for electronic records under 18 U.S.C. § 2703; (3) orders for pen registers

or trap and trace devices under 18 U.S.C. § 3123; and (4) orders appointing a person to direct the

taking of testimony or statements and/or the production of documents or other things.  See 18

U.S.C. § 3512(a)(1)--(b)(1).  In addition, a federal judge may order any necessary procedures to

facilitate the execution of the request, including any procedures requested by the foreign

authority to facilitate its use of the evidence.  18 U.S.C. § 3512(a)(1).

13.     Section 3512 also authorizes any person appointed to direct the taking of

testimony or statements and/or the production of documents.  The appointed person has the

authority: (1) to issue an order requiring a person to appear and/or to produce documents or other

things; (2) to administer any necessary oaths; and (3) to take testimony or statements and to

receive documents or other things.  18 U.S.C. § 3512(b)(2).  In ordering a person to appear

and/or to produce documents or other things, the person appointed, commonly referred to as the

"commissioner," typically uses a subpoena entitled "Commissioner's Subpoena."  Any such

subpoena may be served or executed anywhere in the United States.  18 U.S.C. § 3512(f).

REQUEST FOR ORDER

---

[4] "Section 3512 can be invoked only when authorized by OIA. . . .  Such authorization occurs when an attorney for the government, or his or her office, receives the referral of the request for execution from OIA."  Memorandum from the Deputy Attorney General to Department of Justice Components (May 16, 2011) (on file with the Office of International Affairs).

[5] The term "federal judge" includes a magistrate judge.  See 18 U.S.C. § 3512(h)(1); Fed. R. Crim. P. 1(b)(3)(B) (including a magistrate judge in the definition of federal judge).

14.     The Office of International Affairs has reviewed and authorized the Request and is executing the Request itself.  Consequently, this application for an Order appointing the undersigned attorney as a commissioner to collect evidence and to take such other action as is necessary to execute the Request has been "duly authorized" within the meaning of Section 3512.  In addition, the Request was submitted by an appropriate "foreign authority," the Minister of Government, the designated Central Authority in Panama, and seeks assistance in the investigation of fraud – a criminal offense in Panama.  The requested Order is necessary to execute the Request, and the assistance requested, i.e., the production of business records, falls squarely within that contemplated by Section 3512 and the Treaty.  Finally, this application was properly filed in the District of Columbia.

15.     This application is being made *ex parte*, consistent with U.S. practice in its domestic criminal matters.

16.     When executing a foreign request for assistance in a criminal matter, both Section 3512 and the Treaty authorize the use of compulsory process comparable to that used in domestic criminal investigations and/or prosecutions.  Because subpoenas utilized in U.S. criminal proceedings (i.e., grand jury and criminal trial subpoenas) are issued without notice to any person other than the recipient (i.e., no notice to targets or defendants), orders and commissioner's subpoenas issued in execution of a foreign request pursuant to Section 3512 and the applicable treaty likewise should require no notice other than to the recipients.  Accordingly, this Court should authorize a commissioner to collect the evidence requested without notice to any person(s) or entity(ies) other than the recipient(s) of any given commissioner's subpoena.

17.     Therefore, the United States respectfully requests that this Court issue the attached Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Erica Y.

Laster, Trial Attorney, Office of International Affairs (or a substitute or successor subsequently designated by the Office of International Affairs) as a commissioner, authorizing the undersigned to take the actions necessary, including the issuance of commissioner's subpoenas, as needed, to collect the evidence necessary to execute any pending request for assistance and any subsequent, supplemental requests in connection with the same matter, in a manner consistent with the intended use of the evidence.

Respectfully submitted,

VAUGHN A. ARY
DIRECTOR
OFFICE OF INTERNATIONAL AFFAIRS
OK Bar Number 12199

By:       _____
Erica Laster
Trial Attorney
D.C. Bar Number 1032449
Office of International Affairs
Criminal Division, Department of Justice
1301 New York Avenue, N.W.
Washington, D.C. 20530
(202) 353-1677
Erica.Laster@usdoj.gov